UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FRANCIS WOODROW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAGENT AUTO, LLC D/B/A SAGENT LENDING TECHNOLOGIES,<br><br>Defendant. | Case No.: 2:18-cv-1054<br><br>**Judge J.P. Stadtmueller**<br><br>**Magistrate Judge William E. Duffin** |

# PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1
II. THE PROPOSED SETTLEMENT AND NOTICE PROGRAM ..................................... 2
    A. Structure of the Settlement ................................................................................... 2
    B. Claims Administration .......................................................................................... 2
    C. Response of the Class. .......................................................................................... 3
ARGUMENT .................................................................................................................................. 4
I. THE SETTLEMENT MEETS ALL REQUIREMENTS FOR APPROVAL ................... 4
    A. The Class Representatives and Class Counsel Have Adequately Represented the Class. ......................................................................................... 5
    B. The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion. ................................................................................................ 7
    C. The Settlement Provides Substantial Relief for the Class ................................... 8
        1. Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement. ............................................................................................... 9
        2. The Monetary Terms of this Proposed Settlement Fall Favorably within the Range of Prior TCPA Class Action Settlements. .................. 10
        3. The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class. ................................................................ 11
        4. The Attorneys' Fees Raise No Questions About the Settlement. ............ 12
II. THE FORMS AND MANNER OF NOTICE COMPLIED WITH RULE 23 AND DUE PROCESS ................................................................................................................ 13
CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) .................................................................................................. 10

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV- 2026, 2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012) ................................................................... 6

*Arthur v. SLM Corp*, No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012) ............................................ 4

*Balschmiter v. TD Auto Finance, LLC*, 303 F.R.D. 508 (E.D. Wis. 2014) ..................................... 9

*Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) . 3

*Behrens v. Landmark Credit Union,* Case No. 17-cv-101, 2018 U.S.Dist. LEXIS 106358 (W.D.Wis. June 26, 2018) ........................................................................................................ 7

*Brotherton v. Cleveland*, 141 F. Supp. 894 (S.D. Ohio 2001) ...................................................... 12

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) ................................................... 7

*Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556 (N.D. Ill. March 4, 2014) ....................................................................................................................................... 10

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................ 12

*Cross v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01270 (N.D. Ga.) ......................................... 3

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................................ 8

*Doster Lighting, Inc. v. E-Conolight, LLC,* Case No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499 (E.D.Wis. June 17, 2015) ........................................................................................................ 7

*Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273 (D. Conn. Aug. 3, 2018) ................ 14

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) .................... 5

*Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ......................................................................................................................................... 4

*Hale v. State Farm Mut. Auto Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D.Ill. Dec. 13, 2018) ............................................................................................................ 5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ............. 8

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............. 12

*In re Capital One TCPA Litig.,* 80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................... 11, 13

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011) .................................. 8

*In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977) ................................... 13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .................................................................................... 7

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ........................ 8

*Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ....................................................... 13

*Kolinek v. Walgreen Co.,* 311 F.R.D. 483 (N.D. Ill. 2015) ................................................ 4, 11, 13

*Lucas v. Vee Pak, Inc.,* No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872 (N.D.Ill. Dec. 20, 2017) ......................................................................................................................................... 4

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-CV-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ................................................................................................................................... 4

*McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................... 7

*Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ..................................................................................................................................... 4

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)........... 8

*Mullins v. Direct Digital, LLC,* 795 F.3d 654 (7th Cir. 2015) ........................................................ 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................... 12

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................. 12

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) .......................................................................................................... 10

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ......................................................................................................................................... 8

*Snyder v. Ocwen Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D.Ill. May 14, 2019) ................................................................................................................................... 5

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ....................... 5, 8

*Upshaw, et al. v. Nationwide Mutual Ins. Co.*, Case No. 2:17-cv-01013-EAS-CMV (S. D. Ohio) 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ................................... 6, 13

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .... 4

*Wilson v. Everbank*, No. 14-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ........................... 8

## OTHER AUTHORITIES
Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note .................................................... 11

## RULES
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................... 13

Fed. R. Civ. P. 23(e)(2) .................................................................................................................. 5

**TREATISES**

2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) .................................................................. 7

## I. INTRODUCTION

After arm's-length negotiations, and with the assistance of an experienced and well-respected private mediator, Hon. Morton Denlow (Ret.) of JAMS in Chicago, Plaintiff Francis Woodrow and Defendant Sagent Auto, LLC d/b/a Sagent Lending Technologies ("Defendant") settled Plaintiff's classwide claims relating to calls made by Defendant and its vendors, calls which Plaintiffs asserted were made using an automatic telephone dialing system ("ATDS" or "autodialer") which were alleged to be in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement was sent to the Settlement Class. The reaction of the class to this settlement has been overwhelmingly positive. Most importantly, despite the fact that over 90% of the members of the class received *direct, personal notice by U.S. Mail* (not mere "publication" notice, as sometimes occurs in class action settlements), not a single class member objected. Over 12,000 class members took the time to file a claim and those who have done so stand to receive approximately $72.00 each. Following direct notice under CAFA to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected.

In summary:

| | |
|---|---|
| Notice Reach: | 90% |
| Claims Received: | 12,856 out of 208,051 class members |
| Claims Rate: | 6% |
| Objections: | 0 |
| Exclusions: | 1 |
| Estimated Recovery: | $72.08 |

The Settlement is an excellent result for the Class, particularly in view of the risks and

delays involved in continued litigation. Considering the overwhelmingly favorable support for the Settlement from the class members, Plaintiffs respectfully request that this Court finally approve the Settlement in its entirety.

## II. THE PROPOSED SETTLEMENT AND NOTICE PROGRAM

### A. Structure of the Settlement.

The Settlement Class is defined as "all persons in the United States who received a prerecorded and/or automated call from Defendant on their cellular telephone that was initiated by Defendant's Noble version 8.02 telephony system between July 1, 2014 and March 19, 2019." Dkt. No. 34-1, ¶ 1.35.

The Settlement requires Defendant to create a Settlement Fund of $1,750,000.00. *Id.* at ¶¶ 1.38, 3.1. Out of this Fund, Settlement Class Members who timely returned a valid completed Claim Form will receive a distribution from the Settlement Class Recovery. *Id.* at ¶ 4.1. The amount of each Class Member's Award will be based on a *pro rata* distribution based on the number of valid and timely claims. *Id.* at ¶ 3.4. No amount of the Settlement Fund will revert to Defendant. In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed, a second *pro rata* distribution will be made to all Class Members who made valid and timely claims if doing so is administratively and economically feasible. *Id*.

### B. Claims Administration

On May 7, 2019, this Court granted preliminary approval to the settlement. Dkt. No. 37. As part of the Court's order, at the *parties'* recommendation, and after a competitive bidding process, Kurtzman Carson Consultants, LLC ("KCC") was appointed as Settlement Administrator to give notice to the Settlement Class. *See* Dkt. No. 37 at ¶ 5 (appointing KCC and ordering notice to class members). The Settlement Class, in turn, consists of the 208,051

owners or users of 212,054 unique telephone numbers. *See* Exhibit 1, Declaration of Jay Geraci Re: Notice Procedures at ¶5. Pursuant to the notice plan, KCC mailed 208,051 Notice Packets to Settlement Class Members. *Id.* Of those mailed, 20,262 notices were returned as undeliverable, and through a search of various publicly available sources, KCC was able to re-mail 4,285 of those notices to the best available forwarding address. *Id.* at ¶9. As a result, approximately 90% of the mailed notices have, as best as the parties can determine, reached class members. *Id.* at ¶ 10. Such a percentage far exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%. ); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."). In addition to the direct mailed notice, KCC also established a website, www.sagenttcpasettlement.com, by which potential class members could view settlement documents and make claims. *See* Exhibit 1, Declaration of Jay Geraci Re: Notice Procedures at ¶10. KCC also established a toll-free telephone number through which potential class members could receive additional information about the settlement. *Id.* at ¶11. Finally, KCC provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"). No government entities have voiced any disagreement with any aspect of the settlement. *Id.* at ¶3-4.

      **C.**      **Response of the Class.**

Pursuant to the Court's preliminary approval order, class members had until July 29, 2019, to submit a claim under the settlement. Dkt. No. 37, at ¶ 6.2. KCC received 12,856 valid claims by the postmark deadline. *See* Exhibit 1, Declaration of Jay Geraci Re: Notice Procedures

at ¶12. This represents a combined claims rate of approximately 6%, an amount consistent with other comparable TCPA settlements. *Compare Cross v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01270, Dkt. No. 86-1 (N.D. Ga.) (settlement approved with a claims rate of 6.7%)); *Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

## ARGUMENT

### I. THE SETTLEMENT MEETS ALL REQUIREMENTS FOR APPROVAL

"The Seventh Circuit has acknowledged that federal courts look with great favor upon the voluntary resolution of litigation through settlement and in the class action context in particular, there is an overriding public interest in favor of settlement." *Lucas v. Vee Pak, Inc.,* No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872, at **25-26 (N.D. Ill. Dec. 20, 2017) (quoting *Armstrong v. Board of School Directors,* 616 F.2d 305, 312-13 (7th Cir. 1980) (internal quotation marks omitted)). In that light, "[a] district court may approve a proposed settlement of a class action only after it directs notice in a reasonable manner to all class members who would be bound and finds, after a hearing, that the proposed settlement is 'fair, reasonable and adequate.'" *Snyder v. Ocwen Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at * 13 (N.D. Ill. May 14,

2019) (quoting Fed. R. Civ. P. 23(e)(2)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50.

Rule 23, as revised as of December 1, 2018, "sets forth a list of points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate." *Snyder*, 2019 U.S. Dist. LEXIS 80926, at * 14. These are:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "These considerations overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto Ins. Co.,* No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at **12-13 (S.D. Ill. Dec. 13, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997)).

Those factors are satisfied here.

A.  **The Class Representatives and Class Counsel Have Adequately Represented the Class.**

In a class settlement context, a "presumption of fairness, adequacy, and reasonableness

may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV- 2026, 2012 U.S. Dist. LEXIS 25265, at * 39 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

As set forth in more detail in Plaintiffs' Brief in Support of Preliminary Approval, this case had its origin in early 2017, in an action against Nationwide Bank (the party on whose behalf the calls Plaintiff received were made). *See Upshaw, et al. v. Nationwide Mutual Ins. Co.*, Case No. 2:17-cv-01013-EAS-CMV (S. D. Ohio); Dkt. No. 34, at 1-2. Formal and informal discovery in that case informed Plaintiff that Defendant made the calls at issue, leading to the initiation of this case. *Id.* at 2. Once the case had been initiated, the parties engaged in full, mutual discovery of both the parties and relevant third-party custodians. *Id.* Plaintiff took 30(b)(6) depositions, and Defendant deposed the Plaintiff. *Id*.

In light of this history, Plaintiffs had a complete picture of the case, and did everything possible to get the best possible result for class members. On the basis of these efforts, the case was highly developed.

In addition, "[a] plaintiff must show that: (1) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Doster Lighting, Inc. v. E-Conolight, LLC,* Case No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499, at * 16 (E.D. Wis. June 17, 2015) (quoting *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392-93 (N.D. Ill. 2006) (internal quotation marks omitted)). "In deciding whether to approve the settlement, the court is entitled to give consideration to the opinion of competent counsel." *Behrens v. Landmark Credit Union,*

Case No. 17-cv-101, 2018 U.S.Dist. LEXIS 106358, at * 15 (W.D. Wis. June 26, 2018) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal quotation marks omitted)).

Here, Plaintiff's claims are aligned with the claims of the other class members. He thus had every incentive to vigorously pursue the claims of the class, as he has done by remaining actively involved in this matter since its inception, participating in discovery, sitting for a deposition, and remaining involved in the settlement process. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular.

Plaintiff and his counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Plaintiff also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial.

### B. The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ("[C]ounsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator for the Seventh Circuit Court of Appeals. These factors suggest that the settlement is fair and merits final approval.") (Stadtmueller, J.).[1]

---

[1] *See also Wilson v. Everbank*, No. 14-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and

Here, the Settlement Agreement resulted from good faith, arm's-length settlement negotiations over many months, including an in-person mediation session before the Honorable Morton Denlow (ret.) of JAMS. *See* Dkt. No. 34-1, at 3. Plaintiff and Defendant submitted detailed mediation submissions to Judge Denlow and to one another setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, the parties negotiated their settlement at arm's-length, and absent any fraud or collusion.

### C. The Settlement Provides Substantial Relief for the Class

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." *See also Synfuel Techs,* 463 F.3d at 653 ("The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotes and citations omitted); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs.") (citations omitted). The relief this Settlement provides meaningful and substantial relief, particularly given the facts and circumstances of this case. And the Settlement's terms ensure all Settlement Class Members will be treated equitably.

---

was reached with the assistance of a well-qualified and experienced mediator[.]"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

### 1. Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement.

The Settlement in this matter comes at a moment of substantial uncertainty in this litigation, with Defendant's motion for partial summary judgment pending, and Plaintiff's class certification motion having been due on April 3, 2019. Although Plaintiff was confident of his prospect of success, there was a real possibility the Court's rulings would have defeated the class claims. Nevertheless, Plaintiff and the Class would face a number of difficult challenges if the litigation were to continue.

First, Defendant's motion for partial summary judgment would have eliminated all claims based on Defendant's use of an automatic telephone dialing system ("ATDS"). If the Court granted Defendant's motion, the value of Plaintiff's claims would be reduced significantly, if not eliminated entirely.

Second, while Plaintiff continues to believe that class certification would be achievable, Defendant has consistently argued that class certification would be inappropriate. Indeed, this Court recently denied certification of a proposed TCPA class alleging similar claims. *See, e.g., Balschmiter v. TD Auto Finance, LLC*, 303 F.R.D. 508, 524-525 (E.D. Wis. 2014) (Stadtmueller, J.,), a case involving some of Plaintiff's counsel here. Plaintiff has argued that *Balschmiter* is not controlling following the Seventh Circuit's decision in *Mullins v. Direct Digital, LLC* after *Balschmiter*. 795 F.3d 654, 659-60 & n.1 (7th Cir. 2015) ("We granted the Rule 23(f) petition primarily to address the developing law of ascertainability, including among district courts within this circuit.") (citing *Balschmiter*). But, the fact remains that Plaintiff faced serious risk at class certification, as "[c]ourts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09 C 5555,

2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases). If Defendant were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiff to pursue his individual claims. Indeed, Plaintiff was only three weeks away from filing a class certification brief at the time the parties mediated.

Third, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Plaintiff believed, and continues to believe, in the strength of the claims asserted in this case. But his likelihood of success on class certification, summary judgment, and at trial is far from certain. Accordingly, Plaintiff's decision to settle his claims, and the claims of the members of the class, is reasonable.

> **2. The Monetary Terms of this Proposed Settlement Fall Favorably within the Range of Prior TCPA Class Action Settlements.**

The Settlement requires Defendant to pay $1,750,000 into a Settlement Fund. On a per-class member basis, this amounts to over $8.00 per class member (before any deduction for

attorneys' fees and costs). This compares favorably to other TCPA class actions settlements, and Courts have approved other TCPA class action settlements that achieved much smaller *pro rata* monetary recoveries.[2] Moreover, Class Members will receive real monetary rewards from this settlement. Plaintiff estimates that each of the 12,856 Class Members who have made a valid claim will receive approximately $72, an amount that exceeds comparable settlements.[3]

The Settlement provides substantial relief to Class Members without delay, particularly in light of the above risks that Class Members would face in litigation.

### 3. The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class.

The Settlement treats each class member in precisely the same way. *See* Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note (identifying, among potential "[m]atters of concern," whether "the scope of the release may affect class members in different ways that bear on the apportionment of relief"). Every class member who made a claim will receive the exact same relief, in return for the exact same release as to Defendant. No one was favored, disfavored, or otherwise treated differently from anyone else.

Moreover, the overwhelmingly positive reaction of class members to the Settlement and its relief supports the fundamental equality and effectiveness of the Settlement. As a result of the notice that KCC distributed, to date, 12,856 members of the Class submitted valid claims, and not a single one objected to it. This overwhelmingly favorable reaction to the Settlement supports its final approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more

---

[2] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($4.31 per class member); *Kolinek.*, 311 F.R.D. at 493 (N.D. Ill. 2015) ($1.20 per class member).

[3] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 789 (granting final approval where each class member would be awarded $39.66); *Kolinek*, 311 F.R.D at 493–94 (granting final approval where class members each stood to receive $30).

accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, there were not "few" objections to the settlement—there were no objections. But the critical fact is not that just there were no objections: it is that there were no objections, while at the same time, more than 12,800 valid claims were made. This was not a case where the settlement "slipped under the radar" of class members. Class members responded in significant numbers, yet none of them objected to the settlement. This evinces a settlement that satisfied the class members who benefitted from it. Frankly, this is how class action settlements are supposed to work.

### 4. The Attorneys' Fees Raise No Questions About the Settlement.

Plaintiff has requested, and the Court has awarded $583,333.33 in fees, along with $23,714 in expenses. Dkt. No. 38, at 1. On July 17, 2019, the Court approved Plaintiff's request for attorney's fees and expenses. *See* Dkt. No. 41, at 2 ("Plaintiff's attorneys' fee is one-third of the common fund, plus litigation costs, and is therefore presumptively reasonable and aligned with this circuit's market rate for similar litigation."). Class Members had the opportunity to review and object to the requested fees, and no one did so. Moreover, the fee request falls well

within the range of requests for similar settlements, and will befit the substantial risks Plaintiff's Counsel undertook in pursuing these claims, their efforts on behalf of the Settlement Class, and the resolution they have achieved, as the Court has found.[4]

## II. THE FORMS AND MANNER OF NOTICE COMPLIED WITH RULE 23 AND DUE PROCESS

The polestar for assessing the adequacy of notice, whether through the lens of Rule 23 or constitutional due process, is "reasonableness." *Wal-Mart,* 396 F.3d at 114. Reasonableness is, in turn, "a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). Both the manner of dissemination and the forms of the notice ensured "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). But "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

In this case, direct mail notice was successfully delivered to over 192,000 class members of class members- or approximately 90% of the class. *See* Exhibit 1, Declaration of Jay Geraci Re: Notice Procedures at ¶10. Moreover, KCC set up an administered a settlement website, which contained all relevant documents and notice forms to any class members who researched the website. *Id.* at ¶11. *See,, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard directing class members to website). In sum, the notice program in this case far exceeds the minimum due process requirements.

## CONCLUSION

Plaintiff respectfully submits that the settlement in this matter is an excellent result for class members, and the response from class members suggests that they agree. Not one of the

---

[4] *Cf., e.g., In re Capital One*, 80 F. Supp. 3d at 781 (awarding 36% of the first $10 million of the fund); *Kolinek*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund).

over 200,000 class members has objected to the settlement. Only one class member sought an exclusion. Those class members who took the time to file a claim will receive over $70.00, an amount in excess of many comparable settlements. Plaintiff respectfully requests that the Court approve this request to approve the settlement and enter a final judgment and order.

Dated this 9th day of September, 2019.

Respectfully submitted,

By: */s/ Matthew P. McCue*

LAW OFFICE OF MATTHEW MCCUE
Matthew McCue
Email: mmccue@massattorneys.net
1 South Ave, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415


MEYER WILSON CO., LPA
Michael J. Boyle, Jr.
Email: mboyle@meyerwilson.com
Matthew R. Wilson
Email: mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com

250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

BRODERICK LAW, PC
Edward A. Broderick
Email: ted@broderick-law.com
125 Summer St., Suite 1030
Boston, MA 02360
Telephone: (508) 221-1510

THE LAW OFFICE OF STEFAN COLEMAN,
P.A.
Stefan Coleman
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8248
Email: Law@stefancoleman.com

*Attorneys for Plaintiff and the Proposed Settlement Class*